gard the act of limitations, as it was not specially pleaded.

Mr. Simms, for defendant, contended that this act differs from common acts of limitation in that it was imperative to the jury. The seventh section enacts that all actions or suits founded upon any account for goods, wares, and merchandise, "sold and delivered, or for articles charged in any store account, shall be commenced and sued within one year next after the cause of such action or suit, or the delivery of such goods, &c. and not after." The ninth section declares, that "to prevent any doubt in the construction hereof, it is hereby declared, that the before mentioned limitation of one year, shall take place and be computed from the respective dates or times of delivery of the several articles entered or charged in any such account; and that all such articles as shall have been of more than one year's standing when the action or suit was commenced, shall be disallowed and rejected, and verdict shall be given, or judgment rendered for no more than the amount of such articles as appear to have been actually charged or delivered within one year next before the commencement of the suit as aforesaid."

---

NEALE'S ADM'R (DUFFY v.). See Case No. 4,119.

---

## Case No. 10,073.

### In re NEBE.

[11 N. B. R. (1875) 289.] [1]

U. S. District Court, E. D. Michigan.

BANKRUPTCY — PROOF OF DEBT — HOW AUTHENTICATED—NOTARIAL SEAL—PROOF TAKEN BEFORE ATTORNEY FOR CREDITOR—COSTS—FEES TO NOTARIES.

1. A proof of debt taken before a notary public is not admissible unless authenticated by the official seal as well as the signature of the notary. It must appear from the impression of the seal, that it is the seal of the notary who employs it to authenticate his acts.

[Cited in Re Port Huron Dry Dock Co., Case No. 11,293. Disapproved in Re Phillips, Id. 11,098.]

2. Proofs of debt taken before the attorney of the creditor are not admissible.

3. No fees are taxable as costs in the bankruptcy proceedings and entitled to priority of payment, under section 28 [of the act of 1867 (14 Stat. 530)], to notaries for taking proofs of debt.

[In the matter of Henry Nebe, a bankrupt.]

The register certified that a deposition taken before W. M. Lillibridge, a notary public, was offered as a proof of debt due A. G. Ellair & Co. The form of the jurat is: "Subscribed and sworn before me this 26th day of

[1] [Reprinted by permission.]

October, A. D. 1874. W. M. Lillibridge, notary public, Wayne county, Michigan." Below the signature is an impression on the paper, in the usual form of an official seal, containing the words "Notary public, Wayne county, state of Michigan." It not appearing that this was the official seal of the notary, and it being conceded that it was used in common by him and other notaries; and it appearing also that the notary was the attorney of the creditor, the register declined to accept it as satisfactory, and therefore certified the questions arising upon it into court for determination by the district judge.

By HOVEY K. CLARKE, Register: The act amending the bankrupt act of June 22, 1874, § 20 [18 Stat. 186], authorizes notaries public to take proofs of debt against the estate of a bankrupt—"such proof to be certified by the notary, and attested by his signature and official seal." On this provision several questions of practice arise, which ought to receive an authoritative determination.

First. The statute requires the act of the notary to be authenticated by his signature and his official seal. There is nothing from which it can be inferred that one of these is of less importance than the other, and therefore an authentication by either would be imperfect without the other. But what is an "official seal"? A seal at common law was an impression upon wax. By statute in this state, and by statute or usage in many others, a scroll made with a pen will serve the purpose of a private seal. But this, so far as I know, has never been extended to corporate, or official seals. As regards these, it has required no little litigation to settle the question that an impression on wax is unnecessary; but all the cases hold that an impression on paper is indispensable. But an impression of what? Public seals—and a notary's seal is a public seal—are held to prove themselves. Is any stamp which a notary chooses to affix to his signature entitled to recognition as his official seal? Such a construction strikes me as a burlesque upon the provisions of the act of congress, which makes both signature and seal necessary to the authentication of the notary's act. And if as a public seal it proves itself, must it not show on its face what it is that it proves; not only that it is a seal, but that it is the seal of a notary public; and in order to show that it is the seal of the notary who employs it, that it must bear his name. If it be admitted that the seal in this case is the seal of a notary public, it is just as clearly the seal of every other of the notaries public, in number about one thousand, who hold office in the county of Wayne; and what then becomes of the provisions of the law which require the notary's act to be attested by "his official seal"? In the case of Gage v. Dubuque & P. R. Co., 11 Iowa, 314, the court holds "that unless the name of a notary public and the state in which he acts are engraved upon his seal so that an impression can be

made therefrom, his seal would not be received as evidence." This was held to render invalid a seal where a part only of it was written and not impressed upon the paper. The court says in addition: "If a portion of the words necessary to be used in the body of the seal may be written, the whole may be." I do not see how this rule can be departed from, without introducing a laxity in practice which will defeat entirely the object contemplated by the statute, which requires a notary's act to be authenticated "by his official seal."

Second. Accompanying the proof of debt in this case, is a letter of attorney addressed by the creditors to the notary who took the deposition, authorizing him to represent them at all creditors' meetings. It thus appears that the creditor made his proof of debt before his own attorney. In many courts, how extensively I am not prepared to say, an affidavit taken before the attorney of the party will not be allowed to be read. Proofs of debt in bankruptcy are something more than mere affidavits; the law requires that such a proof must be "satisfactory" to the officer who takes it (section 22) as well as to the register who receives it. Section 3, Act July 27, 1868 [15 Stat. 228]. When it is remembered how large a proportion of clients swear to whatever they are advised by their attorneys is proper, and how general is the want of information by creditors as to what is necessary to be averred in a proof of debt, it will certainly, I think, be found unwise to allow creditors to prove their claims before their own attorneys. The fact that the power is given by the act to notaries without exception, is no valid reason why the courts should not prescribe such limitations as are obviously proper. A notary, who is a member of a partnership, would not be allowed to take the proof of a debt due to his firm sworn to by his partner; and there is really less objection to this, so far as an intelligent understanding of the act by the creditor and the officer is concerned, than there would be to a proof taken before the attorney of the party.

Third. There is still another question, which has become a practical one, relative to proofs of debts taken before notaries. General order 30 provides that fees paid by creditors in establishing their debts, are entitled to priority of payment under section 28 of the bankrupt act; and the question is, what sum shall be allowed to creditors for fees for taking proofs of debt by notaries. The fees of commissioners for this service are fixed by law; the fees of registers are fixed by law and general order 30. No fee is fixed either by law or the general orders for this service when rendered by a notary. The inference must be that no fee can be allowed to notaries unless some such general principle as this is applicable to the case, namely: that where an officer is authorized to perform a service, and no fee is specifically provided for his compensation, he may charge what he thinks the service worth, or what other officers are allowed to charge for a similar service. It is not to be denied that this view of the law finds many advocates among officers who are required to render service for which no specific compensation is provided; and it has, at least, a plausible show of justice in it. There are many services which a register, for instance, is required to render, and which are strictly clerical in their character—such as keeping dockets and filing papers—for which no fee has ever been allowed to him, with the single exception of filing proofs of debt, and the making of necessary copies of papers to be furnished to assignees, for which no fee has been allowed since the amendment of the general orders at the December term, 1871. To allow a compensation for these at the rate allowed to the clerk for similar services, on the ground that "congress never intended" that they should be performed gratuitously, would greatly increase, it is true, the income of registers; but it would do it at the expense of an abandonment of all definite rules for the taxation of these fees, and leave the compensation for a large class of services to be regulated entirely by the discretion of the officers rendering them. I cannot think that such a principle as this will find favor with the courts; and, therefore, that no fees can be allowed against a bankrupt's estate not expressly authorized by the bankrupt act, or the general orders of the supreme court.

LONGYEAR, District Judge. The foregoing conclusions of the register are approved.